IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

MARY PANKEY                                                                    PLAINTIFF

VS.                                                          CIVIL ACTION NO: 1:15CV56-DAS

MISSISSIPPI STATE UNIVERSITY                                                   DEFENDANT

## MEMORANDUM OPINION

Plaintiff Mary Pankey brings this action under the Employee Retirement Income Security Act and the Internal Revenue Code, seeking to recover statutory penalties, compensatory and punitive damages, as well as attorney's fees. Pankey's claims stem from one issue: she allegedly never received statutorily required notice that she was entitled to continued health insurance coverage following her termination. Presently before the court is defendant Mississippi State University's [120] motion for summary judgment. For the reasons set forth below, the court finds that the motion should be granted in part and denied in part.

## I. BACKGROUND

Mississippi State University ("MSU") employed Mary Pankey as a Project Coordinator in its Department of Curriculum, Instruction and Special Education from March 1st, 2010 until August 27th, 2010. Shortly after she was terminated, Pankey filed a wrongful termination and intentional infliction of emotional distress lawsuit in the Circuit Court of Oktibbeha County, Mississippi. The Circuit Court subsequently signed an agreed order of dismissal with prejudice as to that matter on November 18th, 2014. About four months later, Pankey filed the present action, alleging MSU failed to provide her with notice of the potential for continued health insurance coverage following her termination.

1

Though she was terminated nearly four years prior to the commencement of this lawsuit, Pankey alleges to have first become aware of her injury—MSU's alleged failure to provide notice of benefits continuation—in December of 2013, shortly before she deposed MSU's Chief Human Resources Officer, Judy Spencer, for her previous lawsuit. Notably, Pankey visited the doctor and pharmacy on multiple occasions following her termination. Thinking she was no longer covered under MSU's group health plan, she paid all of her medical expenses out of pocket. However, Pankey claims she would not have incurred those expenses—at least not to the same extent—had she known she was entitled to continue her health insurance coverage temporarily with MSU.

MSU, on the other hand, disagrees and claims to have complied with its notice obligations. To support its contention, MSU attached an affidavit from Judy Spencer, the Chief Human Resources Officer, to its motion. The affidavit details with great specificity the protocols by which notices of benefits continuation are processed and mailed to MSU's former employees. After walking through each step of the process, Spencer stated that she has no reason to believe the protocols were not followed in generating and mailing Pankey's notice. Moreover, Spencer stated she is unaware of any records indicating that Pankey's notice was returned as undeliverable. Spencer also claims Pankey never contacted the human resources office or made any inquiries about benefits continuation.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact. *Id*. at 323. The nonmoving party must then "go beyond the pleadings" and "set forth 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when…both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.) (en banc). Importantly, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue of trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

## III. DISCUSSION

### A. FAILURE TO STATE A CLAIM

The first issue is whether Pankey has stated a claim upon which relief can be granted. Pankey's complaint seeks relief pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), which amended the Employment Retirement Income Security Act ("ERISA"),[1] Internal Revenue Service Code ("IRC"),[2] and Public Health Services Act ("PHSA").[3] Later in her complaint, Pankey specifies that her claims arise under ERISA and the IRC. Except for stating that COBRA amended the PHSA to require group health plans to

---

[1] 29 U.S.C. § 1001 *et seq*.
[2] 26 U.S.C. § 4980B.
[3] 42 U.S.C. § 300bb-1.

provide continuing health coverage in her opening paragraph, Pankey's complaint makes no further mention of the PHSA.

MSU argues Pankey has failed to state a claim under ERISA and the IRC, and the court is inclined to agree. MSU correctly points out that, as a state-funded university, it is an arm of the State of Mississippi. *See* Miss. Code Ann. § 37-113-3; *Jagnandan v. Giles*, 538 F.2d 1166, 1173 (5th Cir. 1976). ERISA expressly excludes from its scope all public employees covered by governmental employee benefits plans. 29 U.S.C. §§ 1002(32), 1003(b)(1). Thus, ERISA is not applicable to MSU. *See Bigelow v. United Healthcare of Miss., Inc.*, 220 F.3d 339, 341 n. 3 (5th Cir. 2000). The IRC contains similar exclusionary provisions and specifically exempts "governmental plans"[4] from being penalized for failing to provide COBRA-mandated notices of continuing benefits. 26 U.S.C. § 4980B(d)(2). Therefore, Pankey's claims under ERISA and the IRC should be dismissed.

Unlike her claims under ERISA and the IRC, Pankey did not specifically seek relief under the PHSA. MSU argues that, in light of her failure to clearly articulate a claim under the PHSA, Pankey should not be able to recover under the PHSA. However, when confronted with precisely this issue, the Fifth Circuit found that "in light of (1) the liberal pleading rules applicable in federal court and (2) the striking similarity between COBRA and the relevant provisions of the PHSA, we shall consider the merits of the case as though [the plaintiff] had pled a right to continuation under the PHSA rather than under ERISA." *Bigelow*, 220 F.3d at 344. Heeding *Bigelow*, the court construes Pankey's complaint to include a COBRA-notice claim under the PHSA.

---

[4] "Governmental plan" is defined as "a plan established and maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of the foregoing." 26 U.S.C. § 414(d).

Accordingly, Pankey's claims under ERISA and the IRC are dismissed, and should she be entitled to relief under the PHSA, Pankey is limited to recovering only that which the PHSA authorizes: "appropriate equitable relief."[5] Therefore, Pankey is precluded from recovering fines, attorney's fees, compensatory damages, punitive damages, or interest therefrom.[6]

## B.  NOTICE UNDER THE PUBLIC HEALTH SERVICES ACT

PHSA requires sponsors of group health plans to provide plan participants who lose coverage because of a "qualifying event" with the opportunity to choose to continue health care coverage on an individual basis. *See* 42 U.S.C. 300bb-6(4). One such qualifying event is the termination of a covered employee's employment. *See* 42 U.S.C. § 300bb-3(2). When a qualifying event occurs, an employer must notify the plan administrator within thirty (30) days. 42 U.S.C. §300bb-6(3). The plan administrator then has fourteen (14) days from the date it received notice to provide COBRA-notice to the qualified beneficiary. 42 U.S.C. § 300bb-6.

MSU vigorously maintains that it complied with the procedures set forth above and provided Pankey with adequate notice. Furthermore, MSU claims that even if Pankey never received the post-termination notice of continuing benefits, it nevertheless satisfied its obligation under the PHSA by following its COBRA-notice procedures and making a good faith effort to provide Pankey with notice.

Although the PHSA does not provide what, exactly, constitutes "adequate notice," the Fifth Circuit has considered this issue within the context of ERISA, which contains a similar

---

[5] "Any individual who is aggrieved by the failure of a State, political subdivision, agency or instrumentality thereof, to comply with the requirements of this subchapter may bring an action for *appropriate equitable relief*." 42 U.S.C. § 300bb-7 (emphasis added).
[6] "Appropriate equitable relief," as used in the COBRA provisions of the PHSA, does not include the award of fines and attorney's fees. *See Brett v. Jefferson County, Ga.*, 123 F.3d 1429, 1435 (11th Cir. 1997). Instead, in a case involving "appropriate equitable relief" in the context of an ERISA claim, the Supreme Court found the phrase to include only remedies traditionally viewed as equitable, such as an injunction or restitution. *See Mertens v. Hewitt Associates*, 508 U.S. 248, 255-59 (1993).

provision.[7] In *Degruise v. Sprint Corp.*, an employer sent a COBRA-notice to a recently terminated employee by certified mail with return receipt requested. 279 F.3d 333, 335 (5th Cir. 2002). The United States Postal Service attempted delivery twice, but on both occasions, the former employee was out of town and never received the COBRA-notice. Finding the employer provided "adequate notice," the Fifth Circuit noted that employers are not required to ensure plan participants actually receive notice, but rather, employers are merely obligated to "use means 'reasonably calculated' to reach plan participants." *Id*. at 336. By mailing the letter via certified mail, the employer made a "good faith attempt to comply with [COBRA's] notification provision, and therefore, satisfied the "adequate notice" requirement. *Id*. at 337.

Applying the same standard used in *Degruise*, another court denied summary judgment on the issue of "adequate notice" because the employer could not provide specific details regarding the mailing of the COBRA-notice. *Lawrence v. Jackson Mack Sales, Inc.*, 837 F. Supp. 771, 783-84 (S.D. Miss. 1992). Unlike *Degruise*, the employer could not objectively prove the COBRA-notice was ever mailed. Instead, the employer relied solely on deposition testimony from its insurance clerk, who stated only that "[w]e mailed [the notice] first class mail to the employee home address; that was the latest home address they had on file, we sent to that address." *Id*. at 783. Because she could not recall how the notices were addressed, did not relate the address to which she claimed to have mailed the plaintiff's notice and failed to offer any information concerning the employer's standard procedures for mailing such notices, the court found that genuine issues of material fact existed as to whether the notices were actually mailed. *Id*. at 783-84.

The case a bar falls somewhere in-between *Degruise* and *Lawrence*. Unlike the insurance clerk in *Lawrence*, MSU's Chief Human Resources Officer, Judy Spencer, provided

---

[7] *See* 29 U.S.C. 1166(a).

detailed information about the university's COBRA-notice procedures and was able to find Pankey's last known address on MSU's human resources computer system. However, MSU's proof does not quite meet the threshold in *Degruise*. Although she stated COBRA-notices are mailed via First Class mail, Spencer could not offer any specific proof showing Pankey's COBRA-notice was actually mailed. There were (presumably) no entries in the computer system showing when the notice was posted, and Spencer—since she did not handle Pankey's notice—had no personal knowledge regarding whether Pankey's notice was processed in compliance with MSU's protocols. Consequently, the court is compelled to conclude there is a genuine issue as to whether the notice was mailed, making summary judgment on this issue inappropriate.

## C. STATUTE OF LIMITATIONS

The PHSA does not provide a limitations period for claims based on the failure to give COBRA-notice of continuing coverage. In the absence of a federal statute of limitations,[8] courts must apply the limitations period of the state-law cause of action most analogous to the federal claim. *King v. Unum Life Ins. Co. of America*, 447 Fed. Appx. 619, 625 (5th Cir. 2011); citing *Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir. 1992). This requires courts to "characterize the essence" of plaintiff's federal claim." *Wilson v. Garcia*, 471 U.S. 261, 268 (1985).

Because Pankey filed this action pursuant to the Mississippi Tort Claims Act ("MTCA"), MSU would have this court apply its limitations period to her claim—one year. Miss. Code Ann. § 11-46-11. However, the MTCA is not analogous to the essence of Pankey's PHSA claim. The MTCA is a procedural framework plaintiffs must follow when suing arms of the State of Mississippi, whereas courts in this circuit have generally analogized COBRA-notice claims to actions for unfair insurance-related practices. *See Lopez ex rel. Guitierrez v. Premium Auto*

---

[8] Because COBRA and PHSA were adopted before December 1st, 1990, the general four-year statute of limitations now applicable to federals laws without specified statutes of limitations, 28 U.S.C. § 1658, is not applicable to Pankey's claim. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).

7

*Acceptance Corp.*, 389 F.3d 504, 510 (5th Cir. 2004); Myers *v. King's Daughter Clinic*, 912 F. Supp. 233, 237 (W.D. Tex. 1996). Mississippi has a law against unfair or deceptive insurance practices, but the statute does not set forth a limitations period. *See* Miss. Code Ann. § 83-5-33. Therefore, the court finds that Mississippi's three-year limitations period for "all actions for which no other period of limitation is prescribed" shall be applied. Miss. Code Ann. § 15-1-49.

The next step is determining when Pankey's claim accrued. Although state law fills the gap and supplies the limitations period, federal law determines when a claim accrues. *King-White v. Humble Independent School Dist.*, 803 F.3d 754, 762 (5th Cir. 2015). Courts in this circuit have applied the "discovery rule" to COBRA-notice claims, so Pankey's claim accrued when she knew or, through the exercise of reasonable diligence, should have known she had a claim. *Lawrence v. Jackson Mack Sales, Inc.*, 837 F. Supp. 771, 780 (S.D. Miss. 1992); citing *Maggio v. Gerard Freezer & Ice Co.*, 824 F.2d 123 (1st Cir. 1987). Pankey claims she first became aware of MSU's alleged failure to provide COBRA-notice shortly before a deposition for her previous suit in December of 2013. It was at this point in time, Pankey argues, that her PHSA claim began accruing—not when she discovered that she was no longer covered under MSU's group health insurance plan.

In a similar case involving deficient COBRA-notice under ERISA, the Eleventh Circuit held that a plaintiff's claim did not accrue until "he learned from his lawyer that he should have received notice of his continuation right from [his previous employer]." *Cummings v. Washington Mut.*, 650 F.3d 1386, 1392 (11th Cir. 2011). In *Cummings*, plaintiff's former employer argued that the statute of limitations began as soon as the notification period expired, which was about forty-four (44) days after the plaintiff had been terminated. *Id*. at 1391. However, in refusing to apply the defendant's accrual date, the court reasoned that the "COBRA

notification requirement exists because employees are not expected to know instinctively of their right to continue their healthcare coverage." *Id*. Accordingly, the court concluded that a COBRA-notice claim "accrues when the plaintiff either knows or should know the facts necessary to bring an improper-notice claim: specifically, that his former employer has failed to provide him with the required notice of his continuation right." *Id*.

Although not binding, the court finds *Cummings* highly persuasive. The "discovery rule" for claim accrual applies when "the nature of [an] injury is inherently undiscoverable." Statute of Limitations—In General, 4 Fed. Prac. & Proc. Civ. § 1056 (4th ed.). Though Pankey self-paid for medical treatment on several occasions following her termination, simply knowing she was no longer covered under MSU's group health insurance did not place her on notice of her injury—that she was not provided with COBRA-notice of continuing benefits. The court is also unwilling to assume her termination letter,[9] which stated that information concerning benefits continuation would be forthcoming, placed Pankey on notice of her injury. Pankey had no reason to believe she was entitled by law to this information, and therefore, she had no reason to believe she sustained an injury for which she could seek redress. Accordingly, the court finds that Pankey's claim accrued in December of 2013, and because she filed this action on March 25th, 2015, Pankey's COBRA-notice claim under the PHSA is not time-barred.

## IV. CONCLUSION

MSU's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Pankey's claims under the Employee Retirement Income Services Act and the Internal Revenue Code are hereby dismissed because those laws are inapplicable to government entities. As a result, Pankey is limited to recovering solely under the Public Health Services Act, which limits

---

[9] "You will receive information about benefits continuation from the Department of Human Resources Management." Doc. 31, p. 134.

9

her recovery, if any, to only "appropriate equitable relief." Further, the court denies summary judgment as to (1) whether MSU provided "adequate notice" under the COBRA amendments to the PHSA, and (2) whether Pankey's claim was filed outside of the limitations period.

**SO ORDERED** this, the 30th day of June, 2016.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE